IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

CLEON FRANKLIN,                    )
                                   )
     Plaintiff,                    )
                                   )
v.                                 )        No. 20-cv-02812-JPM-tmp
                                   )
SHELBY COUNTY BOARD                )
OF EDUCATION,                      )
                                   )
     Defendant.                    )

_____

REPORT AND RECOMMENDATION
_____

Before the court on referral for report and recommendation is defendant Shelby County Board of Education's ("the Board") Motion for Sanctions, filed on July 24, 2021. (ECF No. 29.) The undersigned previously entered an Order granting Defendant's Motion to Compel, requiring plaintiff Cleon Franklin to produce numerous recordings he made of the Board's employees and officials. (ECF No. 26.) Franklin has not produced these recordings because they no longer exist. (ECF No. 31.) Upon learning that the recordings were unobtainable, the Board filed the present Motion for Sanctions. For the reasons discussed below, it is recommended that the Board's motion be denied.

## I.   PROPOSED FINDINGS OF FACT

The present dispute arises from Franklin's suit against the Board for allegedly terminating him on the basis of his race and

sex in violation of Title VII of the Civil Rights Act of 1964. (ECF No. 1.) Franklin obtained a right to sue letter from the EEOC after initially filing a charge with the Commission in December 2018. The parties began discovery in the present suit on or around December 11, 2020. (ECF No. 13.) The Board's initial interrogatories asked Franklin to disclose any and all recordings he had made of conversations between himself and employees of the Board, or that were otherwise relevant to his claims. (ECF No. 23-1 at 14, 17.) In response, Franklin produced two audio recordings on January 13, 2021. (ECF No. 23 at 1.) One captured a meeting between Franklin and two Board employees, while the other captured a conversation between Franklin and a subordinate. (Id. at 2.) Neither party argues that these recordings support any of their claims or defenses.

Discovery continued without issue until Franklin was deposed in a separate lawsuit brought by his wife against the Board. (ECF No. 23-2 at 1.) In his March 10, 2021 deposition, Franklin testified that he began "recording everybody every day" once Board officials began asking him to change certain students' grades in violation of district policy. (Id. at 2.) He stated that he was "waiting on [the] opportunity to have these people perjure themselves" before revealing these recordings. (Id. at 2-3.) In response, the Board's counsel emailed Franklin's counsel, asking Franklin to produce any other relevant recordings he may have.

(ECF No. 23-3.) Franklin's counsel agreed to produce any recordings Franklin possessed. (ECF No. 23 at 3; ECF No. 25 at 1.)

No recordings were produced following this exchange. On April 29, 2021, Franklin was deposed in his own case against the Board. Franklin testified that he did not know how many conversations he had recorded and that "some of them got recorded over," but noted that he still possessed some of these recordings and was "in the process of having those extracted from [his] phone." (ECF No. 23-4 at 2-3.) He specifically stated that he either had recorded or believed he had recorded conversations with Board employees Chantay Branch, Debra Wallace, Dr. Patricia Toarmina, Dorsey Hopson, Dr. Joris Ray, Leon Pattman, and Michael Woods. (ECF No. 23-4 at 4-5.) The Board's counsel followed up about these recordings with an email on May 7, 2021, but Franklin's counsel did not respond. (ECF No. 23-5.)

The Board then filed a Motion to Compel Discovery on May 19, 2021. (ECF No. 23.) Franklin responded on May 25, claiming that "the relevant phone conversations were corrupted and were no longer available." (ECF No. 25 at 1.) However, Franklin provided evidence that he had employed a data recovery service on May 15, in the hopes of recovering the recordings. (ECF No. 25-1 at 1.) He requested that the court allow him ten days to produce the recordings. (ECF No. 25 at 1.) The undersigned granted the Motion

to Compel on May 25, 2021, allowing Franklin the requested ten days. (ECF No. 26.)

Thirteen days later, Franklin informed the Board's counsel that the recovery service could not recover the recordings. (ECF No. 29 at 2-3.) Franklin also supplemented his original interrogatory responses. He stated that "at the time of [his] testimony he believed that all recordings were available on his phone," but "discovered that any relevant audio had been recorded over inadvertently" when he "started to gather the recordings at the request of Defendant". (ECF No. 29-4 at 14.) The supplemental response also described one of the deleted recordings and declared that "Plaintiff has turned over all recordings in his possession to Defendant which are reasonably available to him." (Id.)

In response, the Board filed the present Motion for Sanctions on June 24, 2021. (ECF No. 29.) They request sanctions under Federal Rule of Civil Procedure 37(b)(2)(A) for violating the Motion to Compel, Rule 37(e)(1) for spoliating evidence, and Rule 37(e)(2) for intentionally destroying electronically stored information. Their desired relief includes mandatory negative presumptions against Franklin, prohibiting Franklin from introducing certain evidence, and/or full dismissal of Franklin's suit, as well as an award of attorneys' fees and costs. (ECF No. 29 at 3-4.) Franklin filed a response on July 8, 2021. (ECF No. 31.) In his response, Franklin reiterates that the recordings had

been "corrupted" and introduces new evidence demonstrating that he had been looking into ways to recover these deleted recordings since March 2019. (ECF No. 31 at 1-2.) Franklin and his counsel also filed separate affidavits, in which Franklin claims that he "began recording employees of [the Board] after [his] termination" and that he had first realized the conversations were recorded over (i.e., erased) when he began "gathering [his] evidence for the [EEOC] investigator." (ECF No. 31-3 at 1.) The Board filed a reply brief on August 6, 2021. (ECF No. 36.)

## II.   PROPOSED CONCLUSIONS OF LAW

Federal Rule of Civil Procedure 37 governs discovery violations that may warrant sanctions. See Fed. R. Civ. P. 37. At least two different provisions of Rule 37 are implicated by the present motion. First, Franklin failed to comply with the court's Motion to Compel Discovery, which required him to produce the relevant recordings. (ECF No. 26.) Rule 37(b)(2)(A) provides a list of sanctions a court may impose when its discovery orders are violated. Second, Franklin's failure to preserve the recordings implicates Rule 37(e), which provides for a different set of sanctions depending on whether the failure to preserve was intentional. The Board seeks sanctions under Rule 37(b)(2)(A) for the failure to comply with the Motion to Compel, and alternatively under Rule 37(e)(2) for intentional destruction of evidence.

The court finds Rule 37(b) to be inapplicable. Based on Franklin's and his counsel's representations in their filings, it is no longer possible for Franklin to comply with the Motion to Compel. Franklin attempted to produce the compelled information, even enlisting the help of a data retrieval service. (ECF No. 31-1 at 2.) The information is now lost. The question of how culpable Franklin is for that loss is directly addressed by Rule 37(e). See Fed. R. Civ. P. 37(e) (dealing with sanctions where "electronically stored information [should] have been preserved in the anticipation of litigation" and "cannot be restored or replaced".) Thus, the court analyzes sanctions under Rule 37(e).

Rule 37(e) deals with situations where a party has failed to preserve electronically stored information, or "ESI." The term covers "all current types of computer-based information not in tangible form." Wooden v. Barringer, No. 3:16-cv-446-MCR-GRJ, 2017 WL 5140518, at *3 (N.D. Fla. Nov. 6, 2017). Neither party here disputes that the recordings in question qualified as ESI.

Spoliation is "[t]he destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence." Black v. Costco Wholesale Corp., No. 3:20-cv-00344, 2021 WL 2258322, at *1 (M.D. Tenn. Jun. 2, 2021). Rule 37(e) creates a framework for courts to use in analyzing questions of ESI spoliation. Charlestown Capital Advisors, LLC v. Acero Junction, Inc., 337 F.R.D. 47, 59 (S.D.N.Y. 2020). First, a court

-6-

must determine if a party had a "duty to preserve evidence,"
typically "triggered by an event that place[s] the party on notice
that the evidence is relevant to litigation or . . . should have
known that the evidence may be relevant to future litigation."
Gomez v. Metro. Gov't of Nashville & Davidson Cty., Tennessee, No.
3:19-cv-00026, 2021 WL 3406687, at *2 (Aug. 4, 2021) (quoting John
B. v. Goetz, 531 F.3d 448, 459 (6th Cir. 2008)) (internal quotation
marks omitted). After finding that the duty exists, the court must
determine whether "a party failed to take reasonable steps to
preserve electronically stored information that should have been
preserved[.]" Coan v. Dunne, 602 B.R. 429, 437 (D. Conn. 2019).
This determination is made with a four-step analysis: (a) did ESI
exist that should have been preserved? (b) was that ESI lost? (c)
did the loss result from a party's failure to take reasonable steps
to preserve ESI? and (d) can the ESI not be restored or replaced
through additional discovery? Konica Minolta Bus. Sols., U.S.A.
Inc. v. Lowery Corp., No. 15-cv-11254, 2016 WL 4537847, at *2 (E.D.
Mich. Aug. 31, 2016). If the answer to all of these questions is
"yes," then the court must decide if the ESI loss prejudiced
another party. Id. Regardless of prejudice, if a party "acted with
the intent to deprive another party of the information's use in
the litigation," then the court may consider severe measures under
Rule 37(e)(2), such as mandatory presumptions, a default judgment,
or dismissing the case entirely. Id. "A showing of negligence or

-7-

even gross negligence will not do the trick" for a party seeking
these harsher punishments. Applebaum v. Target Corp., 831 F.3d
740, 745 (6th Cir. 2016).

## A.    Intent to Deprive the Defendant of Evidence

As a preliminary matter, the undersigned finds that the
evidence of intentional deprivation of evidence is not sufficient
to warrant sanctions under Rule 37(e)(2). Rule 37(e)(2) requires
a finding that the plaintiff have intentionally acted to deprive
the other party of the information, Lowery Corp., 2016 WL 4537847,
at *6, with the "specific purpose of gaining an advantage in [the
present] litigation," Karsch v. Blink Health Ltd., No. 17-CV-3880
(VM) (BCM), 2019 WL 2708125, at *22 (S.D.N.Y. Jun. 20, 2019). Given
the harsh sanctions available, this intent should be shown by at
least "clear and convincing evidence." CAT3, LLC v. Black Lineage,
Inc., 164 F. Supp. 3d 488, 499 (S.D.N.Y. 2016).[1] When analyzing
intent, circumstantial evidence "may be accorded equal weight with
direct evidence" and "may be sufficient to support even a
determination that requires proof beyond a reasonable doubt." Id.

---

[1]Sixth Circuit District Courts have noted that the standard of
proof for intent is an open issue in the Circuit. Yoe v. Crescent
Sock Co., No. 1:15-cv-3-SKL, 2017 WL 5479932, at n.7 (E.D. Tenn.
Nov. 14, 2017) ("there is an open issue as to whether the
imposition of Rule 37(e)(2) sanctions requires proof by
preponderance of the evidence or by clear and convincing
evidence.") The court here finds the clear and convincing evidence
standard more appropriate due to the harsh sanctions of Rule
37(e)(2), which include full dismissal of a case with prejudice.

at 500. But where information loss can be "credibly explained" by
something other than bad faith, a finding of intent is not
appropriate. <u>Fashion Exchange LLC v. Hybrid Promotions, LLC</u>, 14-
CV-1254 (SHS) (OTW), 2019 WL 6838672, *5 (S.D.N.Y. 2019 Dec. 16,
2019); <u>see also</u> <u>Lokai Holdings v. Twin Tiger USA LLC</u>, 15cv9363
(ALC) (DF), 2018 WL 1512055, at *16 (S.D.N.Y. Mar. 12, 2018) (where
loss of data is "capable of more than one interpretation," intent
should not be found).

The Board argues that Franklin's deposition testimony,
changing timeline regarding when exactly the recordings were lost,
delay in production, and allegedly selective production of two
recordings demonstrates such intent. (ECF. No. 29 at 10.) They ask
for adverse jury instructions against Franklin, mandatory
presumptions against his case, or full dismissal pursuant to Rule
37(e)(2). While Franklin's testimony and actions in the litigation
raise other concerns addressed below, they do not clearly evidence
an intent to deprive the Board of the recordings. Franklin alerted
the Board to the existence of these recordings, and after
discovering that they were fully overwritten, took steps to
retrieve them. (ECF No. 31 at 5); (ECF No. 31-1 at 2); (ECF No.
25-1.) He has provided evidence that they were at least
inaccessible before his depositions. (ECF Nos. 31-2, 25-1.) His
conduct reflects a lack of understanding about how digital
recording works and when data is "corrupted," a desire to overstate

the strength of the evidence in his case, and poor communication
with his counsel, the defendant, and the court.

Much more evidence of intentional deprivation is needed. For
example, in one New York case, intent was only found after the
defense presented evidence that the plaintiffs had manipulated and
altered evidence to hide certain damaging information from email
keyword searches. See CAT3, 164 F. Supp. 3d at 500. Courts across
circuits agree that confusion, negligence, and even intentional
discovery delay are not enough to support a finding of intentional
deprivation. See Acero Junction, Inc., 337 F.R.D. at 67 (refusing
to find intent where defendant's acts could be "credibly explained
as involving gross negligence rather than bad faith."); Sinclair
v. Cambria Cty., No. 3:17-cv-149, 2018 WL 4689111, at *2-3 (W.D.
Penn. Sept. 28, 2018) (refusing to find intent where plaintiff's
text messages were autodeleted *after* a deposition in which she
testified she possessed them); Yoe v. Crescent Sock Co., No. 1:15-
cv-3-SKL, 2017 WL 5479932, at *14 (E.D. Tenn. Nov. 14, 2017)
(declining to find intent where a third party knowingly destroyed
data and knew it would be at issue, due to a lack of evidence that
he intended to affect the current litigation). At this point,
Franklin's conduct more accurately shows a "lackadaisical approach
to [his] discovery obligations [that] has wasted both Defendants'
and the court's time in attempting to ascertain what [evidence]
exists and could be produced." Hybrid Promotions, LLC, 2019 WL

6838672, at *5 ("To the extent that Defendants are asserting that
Plaintiff's misrepresentations are evidence of a more malicious
intent, without additional evidence, Defendants' claim is too
speculative.") But a party's lackadaisical approach to discovery
obligations, while certainly problematic, does not meet the
intentional deprivation standard. <u>Applebaum</u>, 831 F.3d at 745.

Due to the clear lack of evidence that Franklin intentionally
deprived the Board of this evidence, the undersigned submits that
sanctions under Rule 37(e)(2) are not warranted. The remaining
issue is thornier: whether Franklin should be sanctioned for
failing to preserve these recordings under Rule 37(e)(1).

**B.    Duty to Preserve**

The first question Rule 37(e)(1) asks is whether a party had
a duty to preserve the evidence in question. The rule "does not
create a duty to preserve ESI" but rather "recognizes the common-
law duty to preserve relevant information when litigation is
reasonably foreseeable." <u>EPAC Tech., Inc. v. HarperCollins
Christian Publ'g, Inc.</u>, No 3:12-cv-00463, 2018 WL 1542040, at *12
(M.D. Tenn. Mar. 29, 2018). This common law duty arises when a
party "has notice that the evidence is relevant to litigation or
. . . should have known that the evidence may be relevant to future
litigation." <u>Goetz</u>, 531 F.3d at 459 (quoting <u>Fujitsu Ltd. v. Fed.
Express Corp.</u>, 247 F.3d 423, 436 (2d Cir. 2001)); <u>see also Beaven
v. U.S. Dep't of Justice</u>, 622 F.3d 540, 553 (6th Cir. 2010). While

such notice is often accomplished through a "litigation hold" from the other party, the duty attaches "independent of whether Defendants reques[t] a litigation hold." <u>Ferron v. Search Cactus, L.L.C.</u>, No. 2:06-CV-327, 2008 WL 1902499, at *3 (S.D. Ohio Apr. 28, 2008).

In this case, Franklin's duty to preserve the recordings arose, at the latest, on December 21, 2018. Franklin filed his charge with the EEOC on that date and reasonably anticipated litigation when he filed the charge. (ECF No. 29-1 at 1); <u>Black</u>, 2021 WL 2258322, at *2 (events that trigger the duty include "a party's decision to pursue a claim"); <u>Zubulake v. UBS Warburg LLC</u>, 220 F.R.D. 212, 216 ("In this case, the duty to preserve evidence arose, at the latest . . . when Zubulake filed her EEOC charge"). Thus, by the end of 2018, Franklin had a duty to preserve relevant evidence, which would include recordings of the Board's employees.

## C.  Reasonable Steps to Preserve

With the duty to preserve established, the question becomes whether Franklin failed to take reasonable steps to preserve these recordings once the duty attached, since it is undisputed that the recordings existed, that they were lost, and that they cannot be recovered. (ECF No. 31-1 at 2); Fed. R. Civ. P. 37(e). Reasonable steps do "not call for perfection." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendments. Some courts have equated the failure to take reasonable steps to "roughly a negligence

-12-

standard." <u>Acero Junction, Inc.</u>, 337 F.R.D. at 61 (quoting <u>Leidig</u>
<u>v. Buzzfeed, Inc.</u>, 16 Civ. 542 (VM) (GWG), 2017 WL 6512353, at *8
(S.D.N.Y. Dec. 19, 2017)). Typically, the Rule requires compliance
with a litigation hold, and for counsel to begin "monitoring the
party's efforts to retain and produce the relevant [ESI]." <u>Lokai</u>,
2018 WL 1512055, at *11. However, "some litigants, particularly
individual litigants, may be less familiar with preservation
obligations than others who have considerable experience in
litigation." Fed. R. Civ. P. 37(e) advisory committee's note to
2015 amendments. The Committee Notes further caution that where
information is destroyed by events outside of a party's control,
that "Courts may . . . need to assess the extent to which a party
knew of and protected against such risks." <u>Id.</u>

This case presents a close call on whether Franklin took
reasonable steps to preserve evidence after the duty attached.
Franklin has provided multiple, conflicting explanations of when
he learned that the recordings were "corrupted" or "recorded over,"
and whether he still possessed them at certain times. <u>Compare</u> (ECF
No. 31-2) (March 2019 search results for "how to recover deleted
call recordings"); (ECF No. 23-4) (April 2021 Deposition)
(Counsel: "Do you still have those recordings?" Franklin: "I do.
And some of them, we are in the process - some of them got recorded
over"); (ECF No. 29-4) ("When he started to gather the recordings
*at the request of Defendant*, Plaintiff discovered that any relevant

-13-

audio had been recorded over inadvertently") (emphasis added);
(ECF No. 31-3) (Affidavit of Franklin) ("I told the EEOC
investigation that I made recordings. When I started gathering my
evidence *for the investigator*, I discovered that the information
had been recorded over.") (emphasis added). These conflicting
responses make it difficult to determine exactly when the alleged
spoliation occurred. Franklin was apparently aware that the
recordings were no longer extant, at least in an immediately
accessible form, by March 2019. (ECF No. 31-2.) Franklin managed
to preserve some recordings (the two he produced from August 2018),
but no evidence exists that would allow this court to determine,
one way or the other, whether the other recordings were overwritten
before or after December 21, 2018.

The undersigned submits that Franklin likely had lost the
recordings by March 2019. (ECF No. 31-3.) By that point, Franklin
was already researching ways to recover recordings that had been
overwritten. (ECF No. 31-2.) He produced the two recordings that
survived in January 2021. Franklin's testimony in his March 2021
is likely an overstatement of his case's strength. In that
testimony, he does not claim to still possess the recordings he
made, but states that he began recording everyone so that he would
have leverage in the event that they perjured themselves. (ECF No.
23-2 at 2.) Once defense counsel asked for the recordings, it
appears that Franklin informed his counsel that he had made the

-14-

recordings, but that they were no longer accessible. This is
reflected in his April 2021 deposition testimony. Franklin's
statements at that deposition demonstrate a lack of understanding
about how his recording software application worked and whether
the recordings were still available to him. However, he
nevertheless attempted to recover the recordings once the Motion
to Compel was filed, holding out an (ultimately incorrect) optimism
that they remained on his phone. Upon the filing of this motion,
Franklin's counsel "learned that Plaintiff had made pre-lawsuit
attempts via Google seeking information on how to recover
information deleted from his automatic recorder." (ECF No. 31 at
1-2.)

Given this record and the guidance from the Rules Committee,
the court declines to find spoliation in this case. While "any
destruction of documents" is at least negligent after the duty
attaches, it is not clear when the overwriting here took place
given its automated nature. Zubulake, 220 F.R.D. at 20. Franklin's
recording software application automatically deleted old
recordings once its data limit was exceeded. (ECF No. 31-3 at 1.)
This process was an "ordinary operation" that "create[d] a risk
that a party may lose potentially discoverable information without
culpable conduct on its part." Ferron, 2008 WL 1902499, at *1. It
is likely that when the overwriting occurred, Franklin was an
unrepresented party. The Rules caution the court to "be sensitive

to [a] party's sophistication with regard to litigation." Fed. R.
Civ. P. 37(e) advisory committee's note to 2015 amendments. This
is particularly true of "individual litigants, [who] may be less
familiar with preservation obligations than others who have
considerable experience in litigation." Id.; Fuhs v. McLachlan
Drilling Co., No. 16-376, 2018 WL 5312760, at *18-19 (W.D. Penn.
Oct. 26, 2018) ("some ESI was lost by [plaintiff] because he had
an auto-delete function enabled . . . given his lack of
sophistication, the Court concludes that [plaintiff] took
reasonable steps to preserve data.") For example, in Fuhs, the
court declined to find spoliation where a plaintiff's phone had
autodeleted ESI before he was represented in the suit, crediting
his attempts to disable auto-deletion and engage in discovery once
he obtained counsel. Id. Here, once the recordings were requested
in the present suit, Franklin engaged in renewed efforts to recover
them. (ECF Nos. 25-1, 31-1 at 2). The evidence suggests that
Franklin failed to understand his obligations and the
accessibility of the recordings throughout the early stages of
this litigation, but that he attempted to retrieve them once
prompted by counsel.

While a close case, due to Franklin's relative
unsophistication with discovery obligations and the software at
issue, as well as the inability to determine when these recordings
were overwritten, the undersigned submits that no sanctions under

-16-

Rule 37(e)(1) are warranted. However, the undersigned recognizes that Franklin has exhibited poor communication and has failed to clearly explain the status of these recordings, resulting in a months-long dispute over evidence that seemingly never existed at any point during this litigation. Better communication to his counsel and to the Board could have avoided this entire issue. Franklin must take his future discovery obligations seriously.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that the Board's Motion for Sanctions be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

September 28, 2021
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**